# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
### No. 21-0527V
### UNPUBLISHED

|  |  |
|---|---|
| VICTORIA SCHROEDER, | Chief Special Master Corcoran |
| Petitioner, | Filed: May 13, 2025 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC, for Respondent.*

### <u>RULING ON ENTITLEMENT</u>[1]

On January 11, 2021, Victoria Schroeder filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). The Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 1, 2020. Petition at 1.

For the reasons set forth below, I find Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Procedural History

Petitioner filed this matter on January 11, 2021, amending the claim on January 12, 2023. ECF No. 35.  Respondent filed a Rule 4(c) Report opposing compensation on October 30, 2023. Respondent's Rule 4(c) Report ("Report"), ECF No. 43. Respondent argues that Petitioner cannot meet the Table requirements for a SIRVA claim. *Id.* at 9-10. On January 10, 2024, Petitioner filed a motion for a ruling on the record in favor of the claim. Motion for a Ruling on the Record ("Mot."), ECF No. 49. Respondent filed a response on February 28, 2024. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 51. Petitioner filed a reply on March 20, 2024. Petitioner's Response to Respondent's Response to Motion for a Ruling on the Record ("Reply"), ECF No. 55. The matter is ripe for resolution.

## II.    Factual Background

Petitioner's pre-vaccination medical history includes appointments with her Primary Care Physician ("PCP"), Theresa Poppe, MD. Petitioner was seen for right shoulder pain (rotator cuff), right elbow tendinitis, hypothyroidism and hypertension, and pancreatitis. Ex. 2 at 12-72.

On October 5, 2020, Petitioner received a flu vaccine at her PCP's office. Ex 1. The vaccination record shows it was administered in the left deltoid. Ex. 1 at 2. But a letter dated May 2, 2022 (and hence after this claim's filing) was submitted by Petitioner's PCP updating the vaccination record, now stating that the vaccine was administered in Petitioner's *right* deltoid. Ex. 14 at 288.

Petitioner returned to her PCP's office with complaints of right shoulder pain on October 8, 2020. Ex 6 at 44. Petitioner was seen by Nurse Practitioner ("N.P.") Jodi Lambert with complaints of the pain being "consistent" since the vaccination, along with "tingling through her hand". *Id.* at 46. The injury mechanism is listed as vaccination, and the N.P. observed the "[f]lu shot seemed too high, baindaid placed high on shoulder". *Id.* at 45. Petitioner was prescribed a Medrol dosepak, Flexeril, and a sling for her arm. *Id.*

On November 30, 2020, Petitioner had an appointment with an orthopedic physician for right shoulder pain. Ex. 8 at 22. Petitioner informed the treater that she had "immediate" pain in her shoulder after receiving the flu shot approximately 7–8 weeks prior. The orthopedist found that Petitioner had a "SIRVA" and administered a cortisone shot into Petitioner's shoulder. *Id.* Petitioner left a message for the treater on December 9, 2020, complaining that her shoulder pain returned, and  that she felt "electric shock" in her fingertips. *Id.* at 29. Petitioner was referred to physical therapy and rehabilitation.

On January 19, 2021, Petitioner had an EMG of her right arm which was unremarkable. Ex. 10 at 151-52. She then returned to see N.P. Lambert at her PCP's office on February 21, 2021. Ex. 6 at 27-38. Petitioner continued to report pain, numbness, and tingling down her right arm and hand. N.P. Lambert prescribed another Medrol dosepak, increased her Gabapentin, and recommended a follow-up in approximately four weeks.

Between March 4 and 31, 2021, Petitioner attended seven physical therapy visits at Probility Physical Therapy. Ex. 5. It was noted that Petitioner tolerated therapy well. On March 25, 2021, Petitioner returned to see N.P. Lambert. EX. 14 at 229. She reported improvement in her shoulder, with no more numbness and tingling. *Id.* Petitioner was instructed to continue ice/heat therapy as needed and to follow up in four weeks. *Id.*

On May 17, 2021, Petitioner returned to her PCP with continued reports of arm pain. Ex. 14 at 190, 195. Petitioner was instructed to continue taking the Gabapentin; continue to massage at home; and to continue the Norco patch as needed. *Id.* at 207.

Approximately six months later, Petitioner returned to her PCP for treatment of continuing right shoulder pain and other unrelated issues. Ex. 14 at 99. She reported that her right shoulder pain had "been worse in the last three to four months" and inquired about additional cortisone shots. *Id.* Petitioner was diagnosed as having right shoulder tendonitis and instructed to taper off Gabapentin and Norco. *Id.* at 99-137. Petitioner returned to her orthopedist and received a second cortisone injection on December 13, 2021. Ex. 15 at 20.

On February 8, 2022, Petitioner saw Dr. Walter Alomar-Jimenez for shoulder pain that began "after a flu shot" in September of 2020. Ex. 15 at 166.  Dr. Alomar-Jimenez diagnosed Petitioner with rotator cuff dysfunction and subacromial impingement with bursitis. *Id*. at 168. He recommended additional physical therapy,  continuance of pain medications, and suggested petitioner consider an injection in the future.  *Id.* at 169.

On November 17, 2022, Petitioner saw her orthopedist for a follow-up regarding her right shoulder. Ex. 18. She stated her "symptoms started with a flu shot" and returned in September. *Id.* at 23. X-rays were performed, and Petitioner received a lidocaine injection in her right shoulder. *Id.* at 33. She was assessed with chronic right shoulder pain and a "SIRVA". *Id.* An MRI performed on January 12, 2023 showed that there was no rotator cuff tear or tendon retraction, only mild subacromial bursitis. *Id.* at 27.

### III.    Affidavit Evidence

Petitioner filed an affidavit in support of her claim on December 7, 2023. Ex. 21. Petitioner affirms that she accompanied her daughter for a routine physical on October 5, 2020, when she was unexpectedly asked by a nurse if she wanted to receive a flu vaccine. *Id.* at 1. She was then given a vaccine by a nurse she didn't know in her right arm. After the injection she felt "electric shocks and numbness radiation down to the fingers". *Id.* at 1. After many appointments and therapy, she felt as if "no amount of heat, ice, various pain medication, rubs or therapy" have taken away the "constant" pain or provided her with any relief. *Id.* at 7.

### IV.    Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence).

## A. Site of Vaccination

Respondent contends that although Petitioner alleges a right SIRVA, the vaccine record states she received the flu vaccine in her left arm. Opp. at 8-11. Respondent's reading of the administration record is literally correct (Ex. 1 (stating the vaccine was administered in Petitioner's left arm)), but his argument does not take into account the totality of the evidence, which supports a right-side vaccine-related injury.

The medical records, coupled with Petitioner's witness statement, establish that Petitioner consistently and repeatedly reported to treaters right shoulder pain related to the flu vaccine. *See*, *e.g.*, Ex. 6 at 44 (record from October 8, 2020, reporting consistent right shoulder pain since the flu vaccination); Ex. 8 at 24 (reporting right Sholder pain that began immediately after flu vaccine); Ex. 18 at 23 (Record from November 17, 2020 stating that her right arm pain "started with a flu shot").

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

These records provide sufficient evidence that a vaccination was administered in Petitioner's right arm. The subsequent treatment records gain strength as well given their temporal proximity to the date of vaccination, with communications describing the events within three days of her vaccination. The most contemporaneous record referring to right shoulder pain even notes that the "[f]lu shot seemed too high, baindaid placed high on shoulder". Ex. 6 at 45.

Respondent asserts that Petitioner relies on a vaccination record altered at the request of counsel eighteen months after litigation began. Opp. at 11 (citing Ex. 14 at 288). However, as described above, there is sufficient evidence even *without* the corrected administration record to find preponderant evidence that Petitioner's vaccine was likely administered in her right shoulder.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Right Shoulder Condition or Injury that Would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute this aspect of Petitioner's claim.[4]

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

Petitioner's pain occurred within forty-eight hours of vaccination. Ex. 6 at 44-46. Respondent does not contest this aspect of Petitioner's claim. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain more likely than not occurred within 48-hours of vaccination.

#### 3. Petitioner's Pain was Limited to her Right Shoulder

Respondent claims that Petitioner cannot establish that her pain was limited to her shoulder because she also reported pain that radiated into her right arm and hand. Opp.

---

[4] Petitioner notes that she had earlier complaints of right shoulder pain in 2018, but they appear unrelated and/or resolved prior to her 2020 flu vaccine. Mot. at 4-5.

at 12. While Respondent's argument has merit, it ultimately fails to rebut Petitioner's Table showing.

The record contains reports of non-shoulder pain that radiated down Petitioner's arm (Ex. 6 at 45, Ex. 8 at 29), but at the same time consistently identifies pain in her right shoulder. Ex. 8 at 22; Ex. 6 at 27–38; Ex. 14 at 99. Petitioner's complaints, and the diagnoses, are consistent with other SIRVA injuries seen in the program including tendinitis and bursitis. Ex. 14 at 99-137; Ex. 15 at 169. Of course, pain reported outside of the shoulder is likely unrelated to Petitioner's SIRVA. But such issues can be addressed when calculating damages. The mere existence of such record complaints does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at that. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim. Accordingly, preponderant evidence supports this Table element as well.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements. Petitioner has therefore established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

                                    **s/Brian H. Corcoran**
                                    Brian H. Corcoran
                                    Chief Special Master